IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


in re: 3:20 mc 6

Civil Investigative Demand


S-E-A-L-E-D


Before:  HONORABLE JOHN A. GIBNEY, JR.
United States District Judge


phone conference


April 10, 2020

Richmond, Virginia


GILBERT F. HALASZ
Official Court Reporter
U. S. Courthouse
701 East Broad Street
Richmond, VA 23219

APPEARANCES


Michael S. Dry, Esq.
Michael R. Pauze, Esq.
Lawrence Lustberg, Esq.
Jason Jones, Esq.
for Merit Medical Systems, Inc.



Robert P. McIntosh, Esq.
Christopher Terranova, Esq.
for the United States

1          THE COURT:  All right.

2          Let's pause for a second here, and I will sort of

3     call the case.  Okay.  What I will do is this.

4          I will first off call the case.  And then I will go

5     over some ground rules with you.

6          All right.

7          The case that we are here on is case number 3:20 MC,

8     as in M C Hammer, 6.  In re: Civil Investigative Demand

9     number 20-151 to Mark R. Owens, O-W-E-N-S.

10         We have tried to do this case through ZOOM with

11    everyone being able to see each other.  Unfortunately, we

12    could not get the technology to work to do that.  So we

13    are handling this as a conference call.

14         I will ask the lawyers to identify themselves one at

15    a time.

16         First, starting first with the lawyers for Merit

17    Medical System.  Start with Mr. McIntosh, and then we will

18    go to Mr. Pauze and Mr. Dry and Mr. Lustbert.

19         Then go to the lawyers for the government.

20         So, Mr. McIntosh, can you please identify yourself?

21         MR. McINTOSH:  Your Honor, I am Robert McIntosh,

22    Assistant U.S. Attorney, on the other side, actually,

23    representing the United States.

24         THE COURT:  That's right.  You are on Terranova's

25    side.  I apologize.

1        Go ahead.  Mr. Dry, go ahead with you.

2        MR. DRY:  Yes, Your Honor.  Mike Dry making an

3    appearance for Merit Medical.

4        THE COURT:  All right.  Who is next?

5        MR. PAUZE:  Michael Pauze on behalf of Merit Medical.

6        THE COURT:  All right.

7        MR. LUSTBERG:  Good morning, Your Honor.  Lawrence

8    Lustberg, L-U-S-T-B-E-R-G.  I am from Newark, New Jersey

9    on behalf of Merit as well.

10        Thank you.

11        THE COURT:  Anybody else for Merit?

12        MR. LUSTBERG:  Jason Jones is here with me, also.

13    Sorry.

14        THE COURT:  Mr. McIntosh, I am sorry I threw you into

15    the column of the other side in this case, but we all know

16    you work for the government.

17        Who else is here for the government?

18        MR. TERRANOVA:  Good morning, your Honor, Christopher

19    Terranova for the United States.

20        THE COURT:  All right.  So, here is how this will

21    work.

22        We will hear from whoever is going to argue this case

23    for Merit medical.

24        And then we will hear from whoever is going to argue

25    this case for the government.  And then Merit will get the

1   response to that.  And we will see where we go from there.

2        What I would ask is that everyone, because we can't

3   see who is talking, everyone please identify yourself when

4   you start to talk.

5        So, that being said, let's start off with argument

6   for Merit.

7        MR. PAUZE:  Thank you very much, Your Honor.  This is

8   Michael Pauze.

9        Judge, we are asking this court to quash an

10  administrative subpoena to one of our employees,

11  Mr. Owens, Mark Owens.  Mr. Owens lives in this district.

12  He worked in this district.  He was served in this

13  district at the time the subpoena required him to testify

14  here, also.

15       The subpoena stems from a civil False Claims Act

16  investigation of Merit in New Jersey.  That investigation

17  stems from a third party, qui tam law suit that was filed

18  against Merit four years ago, in April of 2016.  That law

19  suit, Your Honor, against Merit has been sealed and not

20  served over the last four years.

21       During that time we believe that the qui tim law suit

22  has been administratively terminated and sealed

23  indefinitely with no periodic review of the cause for the

24  seal as required by the False Claims Act in the Holder

25  case.

1        So unconstrained by any time limit the government

2    embarked over the past four years of investigation of

3    Merit, issued a hundred subpoenas, dozens of

4    interrogatories conducted dozens of interviews, made

5    presentations to Merit, initiated settlement discussions

6    that way about a year ago this time; all while the qui tim

7    law suit was sealed?

8        When those settlement discussions didn't pan out, the

9    government didn't move to unseal the qui tim, instead they

10   embarked on another round of discovery and took

11   depositions, depositions unilaterally from 14 Merit

12   personnel from sales representatives, to regional

13   managers, to vice presidents, all the way up to the CEO.

14       Also during that time the government delayed

15   unsealing the qui tim and they did that to artificially

16   preserve the administrative subpoena authority, which

17   gives them the ability to issue the subpoena that is

18   before this court.

19       Your Honor, the issue begins, we would submit, with

20   the sealing provision.  Let me address that first.

21       All qui tims are initially sealed and not served for

22   60 days.  Congress has that provision in the mid 1980's in

23   a response to a Justice Department, specific concerns from

24   the Justice Department with regard to premature disclosure

25   of plaintiff's civil allegations that could compromise a

1     criminal investigation at a sensitive stage.  We see this

2     in the legislative history and in state court cases, and

3     the government's brief in the state bar case when the

4     Attorney General made the point the seal was designed to

5     afford the government time to investigate before alerting

6     the defendant to the allegation.

7          According to that legislative history congress

8     intended with the vast majority of these cases 60 days for

9     the seal would be enough time.

10         But in a narrowly tailored exception Congress allowed

11    the government to move to extend the time when the

12    complaint sealed and not served for good cause.

13         Now the Fourth Circuit said in HLU versus Holder

14    Congress intended the courts to weigh carefully any

15    request for extensions of the seal.

16         THE COURT:  Okay.  I have read your papers in this

17    case.  I have a passing familiarity with your argument.

18    So let's get to the meat of the thing.

19         MR. PAUZE:  Your Honor, so what we think has happened

20    here is you know over the last 200 days, sorry, last 1200

21    days, the government has unnecessarily delayed lifting the

22    seal on this case.  At the same time they disclosed

23    chapter and verse to Merit with respect to the

24    investigation.  Dozens f administrative subpoenas and

25    interrogatories, intervenes, depositions, made formal

1   presentations to the company, initiated settlement

2   discussions, and given all this, Your Honor, there is no

3   legitimate basis to keep this qui tim law suit sealed.

4        Sealing unnecessarily is precisely what Congress

5   warned against in the Senate report, that the government

6   should not be allowed in any way to unnecessarily delay

7   lifting the seal.  Your Honor, the seal is important here

8   because the government can only issue administrative

9   subpoenas like this one only as long as the case is

10  sealed.  And we see that --

11       THE COURT:  But you are not asking me to unseal it.

12  In fact, I can't unseal it.

13       MR. PAUZE:  No, sir, absolutely not.  That is not

14  what we are asking.

15       THE COURT:  Mr. Pauze, didn't you file something up

16  in New Jersey asking the judge to unseal it?

17       MR. PAUZE:  We did, and the judge has not ruled on

18  that motion.

19       THE COURT:  Have you asked for a hearing on that

20  motion?

21       MR. PAUZE:  We did, we asked for expedited

22  consideration.  Unfortunately have not received any

23  hearing on that.

24       THE COURT:  Have you called his office or her office

25  and asked for a hearing?

1      MR. PAUZE:  We sent two letters asking for expedited

2    consideration of our motion back in August.

3      Judge, this not any end run around that.  We

4    obviously wanted to be heard on that and we waited and

5    waited while the government issued subpoena after subpoena

6    after subpoena.  We continued to wait and we believed that

7    after they had taken a deposition of our C E O it was

8    finally they had come to a conclusion after four years.

9      THE COURT:  Why didn't you call the judge's chambers

10   and say, perhaps our papers have been lost, can you tell

11   us what is going on that is sort of the polite way of

12   moving the judge along.

13     MR. PAUZE:  I appreciate that advice, Your Honor.

14   You know we filed the motion.  Sent in two letters.  The

15   government responded.  So the matter was fully briefed we

16   anticipated that we would get a ruling and haven't heard

17   anything.

18     THE COURT:  Okay.

19     MR. PAUZE:  No, we are not asking you to unseal, of

20   course.  But what I think is notable about this situation,

21   I think it makes it a unique situation is that there is an

22   unusual practice in that court in which, you know,

23   typically courts administratively terminate and they

24   unseal these cases with no periodic review for cause for

25   the seal.

1          One of the things that the government indicated in

2    their papers, that they asked this court to defer to the

3    sealing order of the New Jersey court.  But this court

4    hasn't been provided with those orders, Your Honor.  Not

5    ex parte, not in camera, or under seal, not at all.

6          THE COURT:  Well, it is sealed, isn't it?

7          MR. PAUZE:  It is.  That is the point.  I think that

8    is why it is so important.  Particularly in this case.

9    Because the government has, as I said, there is a practice

10   which involved orders, motions and orders to

11   administratively terminate these cases indefinitely.  So

12   there is no recurring review or cause for the seal.

13   According to that practice this case was sealed in 2016,

14   Your Honor, four years ago.  A lot has happened in this

15   case over the last four years.

16          And, according to the law of the case doctrine this

17   court has to defer to prior decisions of its own or

18   another court where there are different facts in the

19   interim.  I think because the subpoena authority depends

20   on the length of the seal, what we have have here is a

21   situation where the government unnecessarily delayed

22   lifting the seal, which is precisely what Congress warned

23   against, in order to artificially prolong its

24   administrative subpoena authority.

25          THE COURT:  Well, I will agree with you that the

1   conduct by the government in this case has been incredibly

2   abusive.  I don't quite understand what is going on in New

3   Jersey.

4       I know a number of judges from up there.  They are so

5   attentive to their duty that I can't believe that if this

6   was drawn to their attention in some way they would not

7   allow this to continue.  But be that as it may --

8       MR. PAUZE:  Your Honor, the problem with the case is

9   this.

10      THE COURT:  The statute says that until the case gets

11  either taken over by the government or put in somebody

12  else's hands, they let the relator bring the suit, it is

13  sealed, it says while it is sealed the government can do

14  these civil investigative demands.

15      Now, you know, the government has absolutely abused

16  that process in this case incredibly.  There is no way

17  they can shift the blame for this off to anybody other

18  than their own inability to get off the dime in the case.

19      But, the statute says what the statute says.

20      MR. PAUZE:  So, Your Honor I completely agree with

21  you.  I also agree with you that if we are just talking

22  about the first element of enforcing an administrative

23  subpoena, whether they have statutory authority, I

24  completely agree with you, but what the United States

25  versus Powell says, there is additional inquiry, and that

1    is exactly what the court focused on, whether or not that

2    statutory authority is being abused in abusing The Court's

3    process.  If the answer to that is yes, then the subpoena

4    should be quashed.  I think we cite a number of grand jury

5    subpoena cases here.  In all of those cases the grand jury

6    has the, I will call it statutory authority, although it

7    comes under rule 16, but has the authority to issue those

8    subpoenas in all of those cases.  No question about that.

9         But the issue in those cases, and this arises in a

10   number of circumstances, is whether or not that authority

11   has been abused.  I think, Your Honor, that that is

12   different than whether or not they have statutory

13   authority to do it in the first place.

14        I think, you know, I won't go over the Martin and

15   Costa cases, because I think that those really just echo

16   The Court's comments here, but I think, Your Honor, under

17   the Powell case, this court has the power to quash this

18   administrative subpoena.  I think the Supreme Court made

19   clear there were subpoenas issued for improper purposes,

20   like the one that The Court juries described.  That this

21   Court can quash an administrative subpoena.  That is what

22   the Supreme Court has said in Powell.

23        THE COURT:  Wasn't it the improper for purposes in

24   that that they were trying to use the grand jury for civil

25   discovery?

1          MR. PAUZE:  That is exactly the situation in re:

2     grand jury 175.  That's right.  That was the Fourth

3     Circuit.  And this, that case is interesting for two

4     reasons.  One, that case, what the government was doing

5     was issued a grand jury subpoena in order to circumvent a

6     stay on a qui tim case that was in California.  The

7     District Court filed, and Fourth Circuit agreed, that the

8     dominant purpose of that subpoena was to circumvent the

9     stay in the qui tim litigation.  It just so happens that

10    qui tim was the Costa case, which we also cite in our

11    papers.  But that is a perfect example, a perfect analogy,

12    to what we have here.  What we have here is a situation

13    where the subpoena, although as The Court points out, was

14    issued before the government has intervened, it was issued

15    for an abusive purpose.  And when it is issued for an

16    abusive purpose, just like in re grand jury that The Court

17    mentioned in the Fourth Circuit, that subpoena can be

18    quashed.

19         THE COURT:  Let me ask a different question.

20         How do you deal with the fact your employee is

21    willing to testify?  Doesn't that sort of -- how do you

22    get by asserting his right?

23         MR. PAUZE:  Well, so I guess I would say a couple

24    things, Your Honor.  The Court uses the word "willingly."

25         THE COURT:  Well, okay.  Willingly is sort of over

1   stating it, but he got -- he agreed to testify rather than

2   get sued.

3       MR. PAUZE:  He did.  He did.

4       Your Honor, you know setting aside that for a second,

5   here is why Merit has both standing here and a cause of

6   action.

7       First, Your Honor, as I said, under Powell I think

8   this court has the authority to quash this subpoena.

9   Also, Your Honor, under the particular statute here, 31

10  U.S. code section 37-33 subsection B 1 A, this is in our

11  papers, says the subpoenas may not require testimony that

12  would be protected from disclosure under the standards

13  applicable to grand jury subpoenas.  As we all know, grand

14  jury subpoenas proscribed abuse.  In those cases, Your

15  Honor, under the standards applicable to grand jury

16  subpoenas, third parties every day, as this court knows,

17  they move to intervene and quash.

18      Therefore, I think section 37-33 B 1 A gives this

19  court ample room -- that is why we proceeded as we did --

20  to grant our motion to intervene and to quash the

21  subpoena.

22      THE COURT:  What are you intervening in?

23      MR. PAUZE:  This is a good question, Judge.

24  Basically what Congress decided under section B 1 A when

25  it applied the standard applicable to grand jury

1    subpoenas, it simply adopted the grand jury practice, the

2    standards, and also the procedural mechanisms by which you

3    would recognize those rights, Judge.

4        Here the focus in the motion to quash, of course, but

5    generally, you know, even though a grand jury isn't

6    really -- there is no case of controversy in the grand

7    jury proceeding, obviously -- the courts still have

8    permitted third parties to assert rights using that

9    procedural mechanism, intervention.  But I think what is

10   critical is that this court has the power under Powell to

11   quash the subpoena, and has the power under section 37- 33

12   B 1 A to quash the subpoena.

13       THE COURT:  But when you try to quash a subpoena

14   to -- it is one thing to quash a subpoena when they are

15   asking for your own documents, like the case involving the

16   congressman.  It is another thing to try to quash the

17   subpoena to ask somebody else to go in and talk.

18       I mean theoretically I guess Mr -- your employee

19   could go in and spill his guts and they could turn it into

20   an affidavit, and he could sign it, and it would be just

21   Judge -- really, no different than what you have now,

22   isn't that right?

23       MR. PAUZE:  Absolutely, Judge.  That is fine.  We are

24   happy to have him testimony.  If The Court quashes the

25   subpoena and the government --

1     THE COURT:  Obviously you are not happy to have him

2     testify.

3     MR. PAUZE:  Under the right circumstances, I mean,

4     Judge.  Look, our complaint here isn't that he is going to

5     testify.  It is that this is going to continue on and we

6     don't have the right to be present at this deposition.  We

7     have, we don't have the right to cross examine, this is

8     the fifteenth witness, there is no end in sight.  But we

9     thought after the CEO testified we would be finished.

10    That is what they were leading up to, and they would be

11    done.

12         Now that there is yet another subpoena after that,

13    another one, and another one, and this will go on and on.

14         THE COURT:  Maybe.  Maybe not.

15         MR. PAUZE:  In any event, I think what you said at

16    the beginning is what is critical here.  This is abusive.

17    The subpoena should be quashed.  And the grand jury

18    testimony with respect to third parties, like often times

19    third parties move to quash subpoenas to other witnesses.

20    We cite that in our papers In Re: Grand Jury Subpoena 175

21    that The Court mentioned.  That was a subpoena to a

22    company's employee.  The district court quashed that

23    subpoena on motion of the company.  And that was because

24    the government was trying to circumvent the stay of the

25    civil case.  So that is a perfect example of a motion to

1    quash by a company when the subpoena is abusive.

2        THE COURT:  Well, that subpoena was directed to the

3    company, wasn't it?

4        MR. PAUZE:  No, sir.  Directed to the employee.

5        THE COURT:  Okay.

6        MR. PAUZE:  That was an example.

7        THE COURT:  All right.  Do you have anything else?

8        MR. PAUZE:  No, sir.

9        THE COURT:  All right.

10       Let me hear, from -- Mr. McIntosh, will you handle

11   this for the government or pass this off deftly to your

12   colleague in Washington?

13       MR. McINTOSH:  I am pretty bad, so I pass it off to

14   Mr. Terranova.

15       THE COURT:  Okay.  Good job.

16       Mr. Terranova.

17       MR. TERRANOVA:  May it please The Court, Chris

18   Terranova.

19       THE COURT:  Mr. Terranova, why has this gone on so

20   long?  This is just ridiculous.

21       MR. TERRANOVA:  I can understand how Your Honor would

22   believe that now, what was disclosed to The Court is there

23   was a criminal, and my understanding still is, a criminal

24   investigation.  And Judge the Senate report cited, states

25   pending criminal investigation of allegations contained in

1   a qui tim claim will often establish good cause for

2   staying the election --

3       THE COURT:  Is that what you have been arguing up in

4   New Jersey?

5       MR. TERRANOVA:  I think that is part of the reason

6   for the delay.  But I think the larger issue is where we

7   are now.  We intend to in 60 days of Mr. Owens' testimony

8   to make an election under the False Claims Act.  Part of

9   the reason this has taken so long is that the company's

10  production through August 2019, we assert, Mr. Owens

11  testimony less than six months after company completed

12  production.  This is not a case where there were just a

13  few documents that were produced at the end.  This

14  happened in July, August 2019, the company produced over

15  13,000 documents.  These weren't just random documents.

16  They were significant documents in there, including

17  communications from the CEO, in which the executives were

18  discussing financial support essentially being provided to

19  key positions and making decisions whether to continue

20  that policy.  We asked in March of 2017 for the company to

21  confirm that it completed all production of --

22      THE COURT:  Mr. Terranva, you are barking up the

23  wrong tree if you tell me it takes four years to figure

24  out whether to file a law suit.  You have just --

25  sometimes, sir, you have got to jump.  You are a lawyer.

1    You need to get this case rolling.  This is just

2    absolutely ridiculous.

3        I have got to tell you that you may win this motion

4    today, but the next time Mr. McIntosh comes and asks me

5    for an extension of time on a qui tim action it is going

6    to be reviewed very, very, very closely.  This is just --

7    this business of administrative termination is, that is

8    the way to avoid having a case when there is six months or

9    three year reporting.

10       The government has just stretched this out way beyond

11   any -- any reasonable time.

12       So I think you probably better move on to your

13   technical argument, because if you win this motion, that

14   is way you are going to win it.  Don't try to tell me you

15   are doing a good job on it.

16       MR. TERRANOVA:  Thank you, Your Honor.  The testimony

17   of employee, Mark Owens, we believe is information

18   relevant to the False Claims Act investigation, and we

19   believe that has evidence both with respect to his own

20   conduct, and with respect to others.  Even if the United

21   States declined to intervene in the qui tim tomorrow, or

22   intervene in a qui tim tomorrow, the United States still

23   could investigate other individuals, including Mr. Owens,

24   including Mr. (inaudible), including the vice-president of

25   sales of Merit Medical who when he testified invoked his

1    fundamental Constitutional right under the fifth amendment

2    because he we believed these answers would incriminate

3    himself.

4         THE COURT:  Okay.

5         MR. TERRANOVA:  You are --

6         COURT REPORTER:  Can't hear you.

7         MR. TERRANOVA:  Can you hear me now, Your Honor?

8         THE COURT:  I can hear you okay.

9         MR. TERRANOVA:  Okay.  Thank you.

10        So regardless of whether there was a qui tim, a seal,

11   which could have brought the information to the government

12   without filing a law suit, the government would have the

13   authority to investigate other individuals who are not

14   named Judge defendants in the qui tim.  For example, the

15   case that Merit relies on heavily, the case management

16   order in Brasher, lifted the seal in the case entirely,

17   and with the seal lifted, allowed the United States

18   additional time in the case, 30 days, to complete its

19   investigation.  Another case it relies on heavily, In Re:

20   Grand Jury, August 1986, District of Maryland case, held

21   that even after one person was indicted the investigation

22   was with information that may lead to further indictments,

23   even though new evidence was also obtained against an

24   already indicted person Judge a by-product of the

25   investigation.

1     Were it otherwise, the government would foreclose the

2     possibility of bringing wrongdoers to trial.

3     THE COURT:  Let me, Mr. Terranova -- Mr. Terranova, I

4     don't think the argument in this case is that the

5     information that is sought is irrelevant to one or perhaps

6     several investigations.  I don't think that is what the

7     government's point, or what the point is by Merit.

8     Merit's point is that enough is enough, and we need to get

9     this show on the road with the litigation so they can get

10    this cloud behind them.

11    That is really the point that I think you need to

12    address.  Not that you have may want to -- everybody

13    agrees, I think, that, you know, maybe three years ago

14    this would have been perfectly appropriate.  But their

15    point is that you guys have been dilly dallying on this,

16    and that the case needs to move along.  That is the point

17    you need to address.

18    I agree with you, Mr. Terranova, that this gentleman

19    is a perfectly appropriate person to question, and that

20    the areas in which you propose to question him are

21    perfectly appropriate areas.

22    The point is that they are raising that this case has

23    dragged on far too long.

24    Do you want to address that?

25    MR. TERRANOVA:  Yes.  Thank you, Your Honor.

1         Even if that were true, even if The Court in New

2    Jersey required us to make a decision tomorrow, we still

3    could investigate, could still investigate Mr. Owens, and

4    none of the cases that Merit just cited regarding abuse of

5    authority, if it were close to this case, they all involve

6    either privilege issues, abuse of privilege cases.  Half

7    of them were subpoenas to attorneys for information about

8    their client.  There were privilege issues not present

9    here.  Others involved use of grand jury subpoena for

10   trial preparation for civil actions.  Also not the case

11   here.  The issue is in the False Claims Act investigation.

12   None of them involved cases where there was a statutory

13   right of an aggrieved person, the witness gave in

14   violation of law.  Abuse of power cases is a generalized

15   term that that Merit has applied.  It does not apply to an

16   exercise of the False Claims Act, CID authority, which is

17   entirely consistent with the text of the statute.

18         Nor does Merit Medical have standing to raise this

19   argument.  It has not pointed to a single case where an

20   employer has raised the rights of its employee,

21   particularly where that employee has agreed to testify,

22   and has been represented by separate counsel and was

23   served with legal process.

24         We don't believe that would be consistent with the

25   text of the statute, Congress's purpose, or CID has the

1   authority, Congress's statutory command to a government to

2   investigate this matter.  In the Fourth Circuit the Idema

3   case talks about circumstances under which third parties

4   may challenge another subpoena.  That alluded to cases

5   where there is privilege -- where there is some other

6   protected right.  Merit Medical has no protected right of

7   privilege to prevent Mr. Owens from providing information

8   to the United States.  In fact, I was happy to hear

9   counsel for Merit say he is happy to have Mr. Owens

10  testify.

11       THE COURT:  Well, I think that was perhaps a bit of

12  an overstatement by them.

13       MR. TERRANOVA:  That may well be, but I think it

14  highlights the fact there is standing here.  There is no

15  article three injury to Merit Medical.  Particularly,

16  where we have represented on the record in 60 days after

17  Mr. Owens testimony the United States intends to make an

18  election on the qui tim.

19       THE COURT:  Tell me this.  Can they come and sit in

20  and listen to Mr. Owens' testimony?

21       MR. TERRANOVA:  Typically that is not the case, Your

22  Honor.

23       THE COURT:  Well, I know it may not be typically the

24  case.  I am asking whether they can do that.

25       MR. TERRANOVA:  If it something Your Honor would

1    like, we would agree to that, Your Honor.

2          THE COURT:  Okay.  All right.

3          Any other arguments?

4          I think you covered all the points.

5          MR. TERRANOVA:  Thank you, Your Honor.

6          Unless The Court has any further questions, we rest

7    on our papers.

8          THE COURT:  I think we are ready to roll.  All right.

9          Any response from Mr. Pauze?

10          MR. PAUZE:  Your Honor, I think I have a number of

11   responses.  I won't keep The Court.  What I would point

12   out is for sure Mr. Owens didn't end up filing a petition

13   in the case, in this case.  That puts us in a little bit

14   of procedural quandary.  But if you read our papers with

15   respect to why Mr. Owens didn't ultimately file his

16   petition, his lawyer told the government numerous times

17   that he was going to file a petition before this court to

18   get this court to review this.  You know, I hesitate to

19   accurately characterize the government's response, because

20   I don't like to do that.  But I think it is fair to say,

21   Your Honor, that he decided not to file that petition

22   directly Judge a result of fearing a law suit, not to

23   mention obstruction charges because of the government.

24   That is just not right.

25          THE COURT:  I agree with you that it looks like they

1   leaned on him a little bit and he was between a rock and a

2   hard place.  But he has got to do what is best for

3   himself.

4        MR. PAUZE:  Yes, sir.  Although I think he is

5   testifying because he was threatened that he was going to

6   be sued.  Look, I will say, though, Judge -- going back to

7   what Your Honor mentioned right at the beginning -- this

8   is abusive, and I think really that is the beginning and

9   end of this inquiry.  Under Powell this court can quash an

10  abusive subpoena.

11       Your Honor, with respect to standing, we absolutely

12  have standing.  Now, I cite, for example, 111 F 3d.  That

13  is the case where the target of a grand jury moved to

14  quash a subpoena to a witness, right, to a witness based

15  on the target's, the target's interest, not the witness's.

16  The government argued that the target had no cause of

17  action to move to quash the subpoena, which the government

18  argues is the same thing here.  The court rejected that

19  argument.

20       The Court followed the standards applicable to grand

21  jury subpoenas.  In particular court traditional motion to

22  quash practice authorized by rule 17 does confer, confer a

23  cause of action to move to quash the subpoena.  That is in

24  re: Grand Jury 111 F 3d, Your Honor.

25       This statute that applies to these administrative

1    subpoenas, section 37-33 B 1 A, incorporates these grand

2    jury standards.  So I think, Your Honor, we absolutely

3    have standing to challenge the subpoena because it is

4    abusive to Merit.  It is also abusive to Mr. Owens.  But

5    the real abuse here, as The Court pointed out, is how long

6    this is abusive.  And the fact that the qui tim case

7    remains unnecessarily sealed because of the government.

8    If that didn't happen, Your Honor, we could have litigated

9    this case years ago.  To say this has been a burden on the

10   company in terms of time and expense would be an

11   understatement.

12        THE COURT:  All right.  Thank you very much.

13        I have got to say that, as I intimated earlier, I

14   think that the government's delay in this case is not a

15   good thing.  It is my intention to draw this to the

16   attention of the Judicial Conference of the United States

17   and to suggest that the Judicial Conference seek statutory

18   amendments that will prevent this kind of abusive conduct.

19        That said, I will deny the petition to intervene and

20   the motion to quash.  I am going to do this orally because

21   I expect you may want to appeal this to The Fourth

22   Circuit.  If you want to, I want you to have my ruling

23   right now instead of writing an opinion on it.

24        I think, first of all, with respect to intervention

25   there is really not a case to intervene in.  The correct

1    thing to do in this case is what the company tried to do,

2    which is to get some sort of proceeding going in New

3    Jersey.

4        I think to say that there is a cause of action here

5    is incorrect.  I don't see in any of the cases a statement

6    that there is a cause of action against anybody to compel

7    the government to stop doing CID's.

8        I think that there is also a problem with standing in

9    this case, in that essentially the company here is trying

10   to assert a right that the law commits to Mr. Owens, if

11   anyone.

12       Finally, I think the statute is clear that until the

13   United States either accepts or declines the case,

14   declines the case, and it becomes unsealed, the government

15   is free to issue CID's.

16       I am sorry to the people at Merit Medical Systems.  I

17   have no idea whether there is an illegal kickback scheme

18   here or not.  God knows we have a fair amount of it in

19   Richmond with the HDL case.  But, regardless of whether or

20   not there is a viable cause of action against the company,

21   it deserves to be moved off dead center.

22       I apologize that I don't think I have the ability to

23   enter an order on behalf of Merit today.

24       I thank you all for a good job done post haste in

25   this case.

1        I urge you all to move this case along.

2        I will enter an order today that says that this is

3   denied, but that Merit has the opportunity to have a

4   single representative attend the deposition of Mr. Owens.

5   That person may attend the deposition, but may not

6   interject anything, may not object, interrupt, but simply

7   observe.

8        Thank you all very much.

9        Goodbye.

10       MR. PAUZE:  Thank you, judge.

11       MR. TERRANOVA:  Thank you, Your Honor.

12

13                    HEARING ADJOURNED

14

15                 Gilbert F. Halasz, OCR

16

17

18

19

20

21

22

23

24

25